**Carolyn AGONAFER, Plaintiff,**

v.

**Robert E. RUBIN, Secretary, Department of the Treasury, Washington D.C., Defendant.**

**No. 97 Civ 5737 CLB.**

United States District Court, S.D. New York.

Dec. 4, 1998.

Michael Howard Sussman, Sussman, Bergstein, Wotorson & Whateley, Goshen, NY, Ambrose W. Wotorson, Ambrose W. Wotorson, P.C., New York City, for plaintiff.

Andrew W. Schilling, U.S. Attorney's Office, New York City, for defendant.

*FINDINGS, CONCLUSION & ORDER*

BRIEANT, District Judge.

Plaintiff, Carolyn Agonafer, a federal employee, brought this action alleging retaliation, and discrimination on the basis of race, age, and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (1998) [1] against defendant Robert E. Rubin, Secretary, Department of the Treasury. This Court conducted a bench trial from October 13, 1998 through October 14, 1998 and now makes the following findings of fact and conclusions of law.

Ms. Agonafer is a 48 year-old African–American woman who since 1987 has been employed by the Internal Revenue Service (the "IRS"), in its Poughkeepsie, New York, Post of Duty ("POD"). Ms. Agonafer hails from Wilson, North Carolina and has an attenuated and cultivated, southern accent which reveals her heritage. This Court observed Ms. Agonafer's speech as neither con-

---

**1.** At the close of trial, this Court granted defendant's motion to dismiss plaintiff's age and gen- der discrimination claims

fusing nor difficult to understand. Contrary to allegations of the employer, this Court did not observe Ms. Agonafer's accent as reflecting a low-class or uneducated tone.

In 1989, Ms. Agonafer applied for, and was denied promotion to the position of tax auditor—vacancy announcement number 89–71. Although Ms. Agonafer was initially notified that she was qualified for the position, she was subsequently informed by letter that her name was not on the list of those who had been selected. The individual who had been selected for the position for the Poughkeepsie POD was not named in the letter. Ms. Agonafer only learned of the identity of that individual when the Poughkeepsie office had a celebration for that individual. None of the individuals selected for the tax auditor position for vacancy 89–71 were African–Americans. Ms. Agonafer claims that she was more experienced than all those selected, including the individual employed in the Poughkeepsie POD. She raised the issue of race discrimination informally with a Treasury Department Equal Employment Opportunity ("EEO") counselor, but ultimately decided against filing a formal complaint of discrimination when she was told that she was the second highest rated applicant and that she would get the next available position.

In 1991, Ms. Agonafer again applied for and was denied a promotion, this time to a vacant Revenue Officer position in the IRS's Poughkeepsie POD—vacancy announcement number 91–60. This time, she filed a union grievance in May of 1991, based on an undisputed claim that as a result of a "clerical error" she was provided erroneous information concerning her eligibility for the position. Ms. Agonafer expressed her feeling that the clerical error, which resulted in her once again missing an opportunity to be promoted, was racially motivated. Gerardo Fernandez, an EEO counselor and specialist within the IRS, represented Ms. Agonafer in the grievance proceeding and was thus required to inform his immediate supervisor, Michael Shultz, of the grievance. Joseph Rusek, chief of the Collection Division, which included Revenue Officers, also participated in the resolution of Ms. Agonafer's grievance.

The IRS settled the grievance by agreeing that Ms. Agonafer would receive priority consideration for the next available Revenue Officer position.

"Priority consideration" is defined in Section 10 of the collective bargaining agreement between the IRS and National Treasury Employees Union (Plaintiff's Ex. 49) as follows:

B. Priority consideration consists of a promotion certificate which contains an employee's name alone being sent to a selecting official *before the official considers other applicants for a position.* (Emphasis added)

.        .        .        .        .

E. If the appropriate vacancy has already been announced, the employees due the priority consideration will be considered by the selecting official before other applicant are ranked or referred for selection.

According to Mr. Fernandez, "Priority consideration has been, as a matter of practice, a semiautomatic next job of the person who has the priority consideration."

In 1992, Ms. Agonafer once again applied for a vacant Revenue Officer position in the Poughkeepsie POD—vacancy announcement number 92–48. This announcement was for three Revenue Officer positions, one each in the Albany, Queensbury, and Poughkeepsie PODs By this time, Ms. Agonafer had been temporarily relocated to a satellite office in Newburgh, New York. Despite IRS regulations to the contrary, this vacancy announcement was not posted in the Newburgh POD. Ms. Agonafer only found about the vacancy through a fellow employee. Upon receiving that information, she submitted the requisite paperwork—Form 4536—to her manager, Angela Santos, who in turn informed Ms. Agonafer that she was entitled to priority consideration for the Revenue Officer position in the Poughkeepsie POD.

Ms. Agonafer was interviewed on September 24, 1992, in the Kingston POD, by a three member selection panel consisting of Michael Schultz, Group Manager of the Poughkeepsie POD, Al Janik, Group Manager of the Queensbury POD, and Thomas Crossen, Group Manager, Group 16. Every-

one understood that Ms. Agonafer was only interested in the position at the Poughkeepsie POD. Consistent with her priority consideration, Ms. Agonafer was the first applicant interviewed for any of the three positions. All other applicants were interviewed a week later in Albany. All three members of the panel were white. Each member of the panel either admitted knowing or was shown by the evidence at trial to have known of Ms. Agonafer's prior EEOC grievance.

This interview was not Ms. Agonafer's first encounter with Mr. Schultz. In 1987, while on duty in the Poughkeepsie POD, Ms. Agonafer was in the office with Mr. Shultz while a protest march was being conducted over the "Hamilton Fish Bridge" in connection with the Tawana Brawley case.[2] Ms. Agonafer claims that Mr. Shultz observed the march through the window and then proceeded to openly state that they, the African–American marchers, should be killed just like the Jews, and if it were up to him, he'd do it. While this Court takes judicial notice that the Hamilton Fish Bridge is actually in Beacon, the rest of Ms. Agonafer's allegations appeared credible. Poughkeepsie is the location of the Mid–Hudson Bridge.

This statement is not the only racial comment attributed to Mr. Shultz. Thomas Maines, a white male Revenue Officer in the Poughkeepsie POD also testified about a racially motivated comment made by Mr. Shultz. In June 1991, Mr. Maines learned that a friend of his, Zachary Santiago, who is an African–American male, was applying for a Revenue Officer's position with the Poughkeepsie POD. At the time, Mr. Schultz was a Collections Group Manager at the Poughkeepsie POD. Mr. Maines asked Mr. Shultz if this was the year that the Poughkeepsie POD was going to break the "color barrier," which was an explicit reference to the fact that at that time the Poughkeepsie POD was staffed only by white employees. Schultz replied, "not while I'm the manager," or "not as long as I'm manager." This Court finds no basis to disbelieve the testimony of Mr. Maines.

Based on her priority consideration, the only way Ms. Agonafer could not receive the promotion was if she failed the interview. Not coincidentally,[3] the panel unanimously concluded that plaintiff failed the interview. This decision was based primarily on their adverse assessment of her oral presentation and "problem solving skills." Mr. Janik admitted that Ms. Agonafer was in his experience the first person ever to fail a promotion interview. Consistent with the priority consideration concept, Ms. Agonafer was served with a "nonselection letter" detailing the reasons for her non-selection.

On the Interview Form, filled out by Mr. Schultz, the designated leader of the panel, the panel recorded that "Carolyn did not express herself adequately—she used inappropriate language in answering some questions. She rambled on in some instances, and was not concise or clear in her answers." As part of the claim that Ms. Agonafer had poor communication, or "meet and deal" skills, the panel stated that Ms. Agonafer's speech was laced with such poor English such as "dem, dese and dose." Having heard Ms. Agonafer's speech at some length during her trial testimony, this Court finds such a claim highly implausible.

The interview panel also concluded that plaintiff had failed to answer correctly "5 out of 8 questions, and was barely passable on 2 others." Based on the panel assessment, plaintiff was denied the promotion.

All panel members conceded that the panel was not in possession of any model answers prior to embarking on the interview, and in fact, correct answers were completely subjec-

---

**2.** Brawley's advisers claimed Steven Pagones and a group of friends, all white, had abducted and raped the African–American teenager in November, 1987. The claim, which generated much publicity, turned out to be a hoax.

**3.** When asked "how often were interviews held for Revenue Officer positions?" Mr. Fernandez gave the following response:

A:I don't think they're used as a requirement in every promotion package. When I became a revenue officer there were no interviews, and it is my opinion that in promotion packages I have observed the interview processes [are] generally used to attempt to have something that is outside of the paper process to grant or fail to grant to someone the job for which he or she may be applying.

tive. Mr. Schultz testified that the questions were written out before the interview. He also testified that it was standard operating procedure to staple together all documents from an interview, including such questions. However, no copy of Ms. Agonafer's questions was produced at either the EEOC administrative hearing in 1993 or at this trial. Extensive secondary testimony was elicited by both sides to show the content of the questions asked of Ms. Agonafer, and her responses. This Courts finds it more likely than unlikely that the panel's version of Ms. Agonafer's responses were mis-characterizations of her actual responses. Even taking the panel's version on its face, such responses appeared valid, and more often than not, the proffered reasons for their incorrectness were semantical at best.

The evidence adduced at trial clearly indicated that at least three other applicants were ranked by the panel before September 24, 1992, when they interviewed Ms. Agonafer. Sybil Wechsler was ranked on September 14, 1992 (Plaintiff's Exhibit 55 at page 346); Lisa T. Satallante was ranked on September 16, 1992 (Plaintiff's Ex. 56 at page 502); and William L. Nightingale was ranked on September 21, 1992. The Court finds that the dates on which two of the individuals selected for the Revenue Officer positions were ranked were either conspicuously erased from the ranking sheet or not produced by the defendant (David Yankowski, Plaintiff's Ex. 54, page 430; and Joanne Wood, Plaintiff's Ex. 52). Ranking these applicants before interviewing Ms. Agonafer was a blatant and deliberate violation of the collective bargaining agreement provisions relating to priority consideration. Such violation supports an inference of an actual intent to discriminate. We note the repeated efforts of Mr. Shultz and Mr. Crossen to deny the violation, despite overwhelming documentary evidence to the contrary and the obvious inconsistencies between their trial testimony and their sworn affidavits.

Following the interviews conducted by the panel, Joseph Rusik was in charge of offering applicants the new Revenue Officer positions. The position of Revenue Officer for the Poughkeepsie POD was offered initially to Sybil Wechsler, who declined for personal reasons. The position was then offered and accepted by David Yankowski, who was at that time a 26 year old "seasonal employee" with less than one year experience. A "seasonal employee" is an employee that the IRS calls into to prepare tax returns during the filing season. In contrast to Mr. Yankowski, Ms. Agonafer had ten years of experience with the IRS. Both Ms. Wechsler and Mr. Yankowski were white.

In January of 1993, Ms. Agonafer filed an administrative complaint, alleging that her non-selection was the result of retaliation and discrimination based on age, color, sex and race. After a two day hearing, an Administrative Law Judge found insufficient evidence to sustain Ms. Agonafer's charges, a finding adopted by the Department of Treasury's EEO office, and affirmed by the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued to plaintiff a notice of a right to sue on April 29, 1997, and she timely filed this complaint on August 1, 1997. Ms. Agonafer claims to have incurred $15,000.00 in legal costs as a result of the EEOC proceeding.

Defendant denies that any of the decision-makers in this case were motivated in any way to retaliate against plaintiff because of her prior complaint to the EEOC. Defendant also denies that any of the decision-making authorities in this action bore any improper racial animus toward plaintiff.

"To establish a *prima facie* case for retaliation, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996). Our Court of Appeals has listed the elements of a prima facie Title VII case of discrimination as (1) membership in a protected class, (2) qualification for the position, (3) denial of the position and (4) the fact that the denial occurred in circumstances giving rise to an inference of discrimination on the basis of the plaintiffs membership in the protected class. *See Stern v. Trustees of*

*Columbia University,* 131 F.3d 305 (2d Cir. 1997); *cf. Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997) (en banc).

This Court finds that based on the complete record, there can be no doubt that plaintiff proved a *prima facia* case of retaliation and discrimination.

Likewise, the defendant has proffered his non-discriminatory justification for failing to promote Ms. Agonafer. What remains for resolution is whether the IRS's proffered justification for not promoting plaintiff—specifically the perception that she lacked problem solving skills and was unable to communicate clearly—is merely a pretext for retaliation and/or racial discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Gallo v. Prudential Residential Services,* 22 F.3d 1219 (2d Cir. 1994); *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993).

■ The IRS itself follows the principle of "substance over form" when dealing with taxpayers who have attempted to avoid taxes by relying on documents or events which are either unreal or a sham. *See e.g. Higgins v. Smith,* 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406 (1940) (*citing Lucas v. Earl,* 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930)). After considering the circumstances under which each of these defense witnesses testified, and taking into account each witness' intelligence, motive and state of mind, as well as his demeanor and manner while on the stand and every matter in evidence which tends to show whether a witness is worthy of belief, this Court concludes that the IRS's proffered justification was pretextual, a sham, and based at least in part on non-existent facts.

The entire situation surrounding the IRS's failure to promote Ms. Agonafer to the Revenue Officer position in the Poughkeepsie POD under vacancy announcement 92–48 can be deemed nothing short of a *fait accompli.* While some of the events might be coincidental, the totality of the circumstances reveals an effort to deny Ms. Agonafer a promotion, as to which she had been granted priority consideration. The IRS, through its agents, failed to inform her of a position that she was not only eligible to obtain, but one that she was virtually guaranteed to receive. The panel improperly ranked other applicants, including the two individuals who were ultimately offered the position, prior to interviewing Ms. Agonafer[4]. This standing alone was a clear and deliberate violation of the collective bargaining agreement procedures relating to priority consideration. The panel asked Ms. Agonafer a series of questions that were largely subjective in nature and kept no record of the questions themselves or the acceptable answers. This created an environment where the panel members were the sole arbitrators of the accuracy and merit of her responses. These questions have not been produced, nor have Ms. Agonafer's actual responses, and there is no evidence that these questions were the same ones presented to the other applicants. The panel was also fully aware of Ms. Agonafer's prior EEOC grievances. Responsible officials appear to have orchestrated a charade which continued through the trial.

An employer may decline to promote " 'on the basis of subjective business judgments, [or indeed] for any reason that is not discriminatory,' " *Thornley v. Penton Publishing,* 104 F.3d 26, 29 (2d Cir.1997). Nonetheless, having had the opportunity to observe the witnesses' demeanor in court and finding such overwhelming inconsistencies and implausibilities throughout their testimony, this Court finds that the reasons given for failing to promote Ms. Agonafer cannot be accepted as correct, and they are pretextual.

The finding that the IRS's proffered reason was a pretext does not, however, end this Court's inquiry. An employer's proffered

---

4. While the documentary evidence did not affirmatively indicate the exact date that Ms. Wood and Mr. Yankowski were ranked, plaintiff has proved enough circumstantial evidence to support an inference that the dates in question, which were either missing or obviously erased, were prior to Ms. Agonafer's interview. *Cf.*

*Kronisch v. U.S.,* 150 F.3d 112, 126 (2d Cir.1998) ("It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.")

reason for failure to promote "cannot be proved to be 'a pretext for *discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Gallo*, 22 F.3d at 1225 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original)). In the context of a retaliation claim, "[t]he critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993).

Based on the totality of the circumstances, including, but not limited to, the fact that Mr. Shultz had clearly established views of racial animus, and that the entire panel was aware of Ms. Agonafer's prior EEOC grievances, this Court finds that racial discrimination combined with retaliatory animus, were the real reasons behind the failure to promote Ms. Agonafer. *See Stern, supra*, 131 F.3d at 314 *(citing Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976) ("an invidious discriminatory purpose may often be inferred from the totality of the relevant facts")). But for discrimination and retaliation, her right to priority consideration would have resulted in promotion.

Recognizing the complexity of the federal GS pay-scale system, combined with the uncertainty of whether Ms. Agonafer would have received the position as a GS–5, 7 or 9, we estimate that lost pay to date does not exceed $25,000.00, although this depends on how she would have been classified and could exceed that amount, or could be less. The court will combine the matter of lost pay with the general compensatory damages leading to a total damage award in the amount of $140,000.00, which shall encompass back pay, the reasonable fees incurred prosecuting the prior EEOC grievance, as well as compensation for shame, humiliation and emotional suffering associated with the violation of her rights. The Court declines to order a promotion, finding that money damages provide an adequate remedy at law and that the injunctive relief would be impractical, opening plaintiff to the risk of further pretexts, while at the same time opening defendant to the risk that legitimate future management decisions might be challenged as retaliatory.

█ The Court also has discretion to award attorney's fees to a prevailing party in a Title VII action. 42 U.S.C. Section 2000e–5(k). Absent special circumstances, a court should ordinarily award attorney's fees. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975); *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *See Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). As plaintiff is the prevailing party, and circumstances do not make an award unjust, she is entitled to recover reasonable attorney's fees.

Plaintiff must submit a fee application supported by a contemporaneous time charge record by December 17, 1998. Defendant will have until December 28th to file objections, if any. When the Court has ruled on the fee request, a final judgment will be entered.

SO ORDERED