HUDSON VALLEY BLACK
PRESS, Plaintiff,

v.

INTERNAL REVENUE SERVICE,
William Strugatz and Celeste
Richardson, Defendants.

No. 01 CIV. 8571(WCC).

United States District Court,
S.D. New York.

March 3, 2004.

**544**

Charles Stewart, Newburgh, NY, Plaintiff Pro Se.

David Kelley, Acting United States Attorney for the Southern District of New York, (Edward Chang, Asst. United States Attorney, Of Counsel), U.S. Department of Justice, New York City, for Defendants.

**1.** All references to the Complaint are to the Fourth Amended Complaint filed by HVBP. The statement of facts herein is based upon the allegations in the Complaint which we accept as true in deciding the motion to dismiss.

**2.** "[S]ole propritetorships may proceed *pro se* in Federal court." *Kreebel v. N.Y. City Dep't of Hous. Pres. & Dev.,* 2002 WL 14364, *4, 2002 U.S. Dist. LEXIS 71, at *14 n. 5 (S.D.N.Y. 2002).

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge

Plaintiff Hudson Valley Black Press ("HVBP") brings this *Bivens* action against defendants William Strugatz and Celeste Richardson in their individual capacities as employees of the Department of the Treasury, Internal Revenue Service ("IRS"). Defendants move to dismiss the Complaint[1] pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. Alternatively, defendants request summary judgment pursuant to FED. R. CIV. P. 56. For the reasons discussed herein, defendants motion to dismiss is granted.

## BACKGROUND

HVBP, a sole proprietorship appearing *pro se* in this action,[2] (Stewart Aff. ¶ 17), publishes *The Black Press,* a newspaper that focuses on matters of interest to the African–American community. Defendants are IRS agents assigned to IRS facilities in Orange County, New York. (Complt.¶ 4.) In December 1998, Judge Brieant issued an opinion in *Agonafer v. Rubin* wherein he concluded that a former employee had proved at a bench trial that the IRS discriminated against her on the basis of race. 35 F.Supp.2d 300, 305 (S.D.N.Y.1998). Sometime after this opinion was issued, HVBP published an article addressing *Agonafer* that included comments highly critical of the IRS. (Complt. ¶ 7.)[3] Two weeks later, the IRS announced

**3.** Plaintiff also alleges that someone in the Kingston, New York office of the IRS had invited HVBP to refer an African–American to the agency for potential employment. HVBP recommended someone who was eventually hired. This person reported unidentified conduct by IRS officials that created a "national scandal." (Complt.¶ 7(j).) Threatening phone calls to HVBP from unidentified parties followed this incident. (Stewart Aff. ¶ 7.) Plaintiff has not specified when these events occurred, but we will assume they occurred

that it was auditing HVBP and, shortly thereafter, Strugatz appeared at HVBP offices. (*Id.* ¶ 7(a).) During this meeting Strugatz made "slurs about slavery reparation and the name of plaintiff's publication" and criticized the content of the publication. (*Id.*)

After Strugatz completed the audit, he used coercive tactics in an attempt to persuade HVBP to sign a report containing false findings and then filed the report after HVBP refused to do so. (*Id.* ¶¶ 7(c), 7(d).) An IRS hearing officer rejected Strugatz's false report and Strugatz visited HVBP's office again to try and coerce HVBP to sign the report. (*Id.* ¶ 7(e).) Part of this visit was recorded on audiotape. (*Id.*) Sometime thereafter, Richardson replaced Strugatz on the matter and all of HVBP's relevant accounting records, including tax returns and computer diskettes, were seized. (*Id.* ¶¶ 7(g), 7(h).) "Plaintiff made repeated requests to defendant for copies of the tax returns" so he could defend himself in the administrative proceeding but HVBP's requests were refused. (*Id.* ¶ 7(i).) Richardson acknowledged that the IRS possessed the relevant records "and promised to provide copies to plaintiff via [the] Freedom of Information Act . . . ." (*Id.* ¶ 7(k).) Instead Richardson caused tax liens to be filed against HVBP. (*Id.*) At an administrative hearing, HVBP's requests for the relevant documents and diskettes were again denied. (*Id.* ¶ 7(1).) As a result of defendants' actions, HVBP has been unable to publish *The Black Press* or otherwise conduct business.

Plaintiff brought this *Bivens* action seeking money damages to vindicate alleged violations of his First, Fourth and Fifth Amendment rights.[4] Plaintiff also asks this Court to vacate the tax liens at issue. Defendants move to dismiss because they contend that a plaintiff seeking to vindicate its civil rights may not pursue a *Bivens* action against agents of the IRS.

## DISCUSSION

### I. Standard of Review

■ On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to

---

prior to publication of the *Agonafer* article and provided additional motive for the alleged retaliatory audit.

4. In paragraphs 18 and 24 of the Complaint, plaintiff alleges it was denied due process in violation of the Fifth and Fourteenth Amendments. Plaintiff cannot plead a violation of the Fourteenth Amendment against defendants because the Fourteenth Amendment does not apply to federal actors. *United*

States v. Edwards, 98 F.3d 1364, 1368 (D.C.Cir.1996). We will therefore consider only the alleged deprivation of rights under the Fifth Amendment. Plaintiff also claims that "defendants violated the liberty interest clause of" the Fourteenth Amendment. (Complt.¶ 20.) Construing the Complaint liberally, we will assume that plaintiff is asserting that there was a Fifth Amendment substantive due process violation.

prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978). However, *pro se* complaints "are held to 'less stringent standards than formal pleadings drafted by lawyers,' and are to be construed liberally on a motion to dismiss." *Van Ever v. N.Y. State Dep't of Corr. Servs.,* No. 99 Civ. 12348, 2000 WL 1727713, at *2 (S.D.N.Y.2000) (citations omitted).

## II. *Bivens v. Six Unknown Fed. Narcotics Agents*

In *Bivens v. Six Unknown Fed. Narcotics Agents,* the Supreme Court held that the plaintiff could bring a civil suit against agents of the Federal Bureau of Narcotics seeking money damages to vindicate a deprivation of that plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Although the Fourth Amendment was silent on the issue, the Court reasoned that it could recognize a private action for money damages because Congress had not prohibited such an action and there were "no special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 396–97, 91 S.Ct. 1999.

There have been two occasions since *Bivens* wherein the Supreme Court has extended its holding to apply to other constitutional deprivations caused by agents of the federal government. In *Davis v. Passman,* the Court held that the plaintiff, a former congressional staff member who was discriminated against by a congressman on the basis of gender, could bring a *Bivens* action. 442 U.S. 228, 248–49, 99

S.Ct. 2264, 60 L.Ed.2d 846 (1979). The specific right that was allegedly violated in *Davis* was the right to be free from official discrimination. *Id.* at 235, 99 S.Ct. 2264; *see also Bush v. Lucas,* 462 U.S. 367, 376, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). This right, the Court held, was found in the Equal Protection Clause which is incorporated into the Fifth Amendment Due Process Clause through the doctrine of reverse incorporation. *Davis,* 442 U.S. at 234, 99 S.Ct. 2264. The second instance wherein the Court was willing to extend the holding of *Bivens* was in *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In *Carlson,* the representative of a deceased prison inmate was allowed to pursue a *Bivens* action to vindicate a violation of the prisoner's Eighth Amendment right to be free from cruel and inhuman punishment. *Id.* Then Associate Justice Rehnquist filed a dissenting opinion in the case that advocated the complete rejection of the *Bivens* doctrine. *Id.* at 34, 100 S.Ct. 1468 (Rehnquist dissenting).

 Even construing the allegations in the Complaint liberally, the present case does not fall within *Bivens, Davis* or *Carlson.* Although HVBP claims that there was a Fourth Amendment violation that brings this case within *Bivens,* plaintiff offers only the following slender allegation in the Complaint: "According to plaintiff's accountant, all the accountants [sic] records were seized and taken into custody by the defendant for the period in which the ... delinquent taxes are claimed, [sic] and the plaintiff's tax return records and diskettes which contained the records for these periods were included in the seizure." (Complt. ¶ 7(a).) This statement is inadequate because plaintiff has not alleged that its property was seized in the course of a warrantless search or that the agents seizing the property were acting under a defective warrant. *Cf. G.M. Leasing Corp. v. United States,* 429 U.S. 338, 359–60, 97

S.Ct. 619, 50 L.Ed.2d 530 (1977) (holding that IRS agents violated the Fourth Amendment when they seized taxpayer property during a warrantless search and remanding for a determination of whether the plaintiff's *Bivens* action should be dismissed because the IRS agents acted in good faith); *Castro v. United States*, 34 F.3d 106, 113 (2d Cir.1994) (Fourth Amendment violation was properly pled where "the complaint alleged that the federal agents, acting without a search warrant or probable cause, entered and searched" the plaintiff's home).[5] Furthermore, plaintiff does not even indicate who seized the property. HVBP states that "defendant" seized the property—this ref-

erence could be to Strugatz or Richardson or it could even be to the IRS since HVBP refers to the IRS as "defendant" in multiple paragraphs of the Complaint. (Complt.¶¶ 7(a), 7(g), 7(k).) While we must liberally construe the pleadings of a *pro se* plaintiff, we cannot merely assume that plaintiff meant to allege that the defendants in this case seized taxpayer property from private offices without a warrant or pursuant to a defective warrant in order to cure HVBP's defective allegations.

The Complaint also fails to raise allegations that bring this case within *Davis.* While plaintiff arguably has established that HVBP was denied due process,[6]

5. Plaintiff has not alleged that the records in question were turned over to defendants in response to a summons that was improperly issued under 26 U.S.C. § 7602. However, even if it had, plaintiff cannot raise a Fourth Amendment objection to the initial summons at this juncture.

The IRS does not need probable cause to issue a summons under § 7602; it need only act in good faith. *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. White*, 853 F.2d 107, 111 (2d Cir.1988). A summons issued pursuant to § 7602 is not self-enforcing; if a taxpayer refuses to comply with a summons, the IRS must bring an adversary proceeding in a district court pursuant to § 7604 to enforce it. *See Powell*, 379 U.S. at 58, 85 S.Ct. 248. Where the summons is served on a third party in possession of the taxpayer's records, the taxpayer may bring a proceeding to quash the summons or may intervene in an action brought by the IRS against the party in possession. 26 U.S.C. § 7609(b); *United States v. Beacon Federal Savings & Loan*, 718 F.2d 49, 54 (2d Cir.1983). A court should deny enforcement where "the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58, 85 S.Ct. 248. However, when the taxpayer complies with the summons instead of challenging it, the taxpayer is generally held to have waived his Fourth Amendment objec-

tion. *See Vaughn v. Baldwin*, No. 90 Civ. 70477, 1991 U.S. Dist. LEXIS 3449, at \*6–8, 10 (E.D.Mich. Mar. 6, 1991) (holding that the plaintiff waived his Fourth Amendment objection when he complied with an IRS summons despite the fact that he attempted to revoke consent because the IRS was entitled to remain in possession of the records for a reasonable investigatory period); *cf. Linn v. Chivatero*, 714 F.2d 1278, 1284 (5th Cir.1983) (stating that the plaintiff was entitled to the return of records that were mistakenly released in response to an IRS summons). Therefore, if HVBP desired to challenge the summons on Fourth Amendment grounds, it was required to do so in a manner provided by the Internal Revenue Code (the "Code").

6. Plaintiff asserts that it was deprived of due process and argues that "defendants violated the liberty interest clause of" the Fourteenth Amendment. (Complt.¶ 20.) As noted *supra* note 4, we will assume that plaintiff is asserting that there was a Fifth Amendment substantive due process violation. The Fifth Amendment "guarantee of 'due process of law' ... [includes] a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). "Rights are fundamental when they are 'implicit in the concept of ordered liberty,' ... 'or deeply rooted in this

*Davis* involved a violation of equal protection. *See FDIC v. Meyer*, 510 U.S. 471, 484 n. 9, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (noting that while the Court allowed the plaintiff to proceed with an equal protection claim in *Davis*, the Court has not recognized a *Bivens* claim to remedy other due process violations). No facts giving rise to a claim based on an equal protection violation have been alleged here; HVBP contends that it was audited because it published statements critical of the IRS in *The Black Press*, not because it is owned by an African–American.

### III. *Factors to be Considered Before Expanding Liability Under Bivens*

■ Because the Complaint fails to adequately allege violations of the Fourth Amendment and the Equal Protection Clause, we consider only whether this Court should infer a *Bivens* remedy to allow redress of the First Amendment and due process violations alleged in the present case. We proceed with this inquiry cautiously because since *Carlson* was decided, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).

For example, in *Bush* the Court held that an employee of the National Aeronautics and Space Administration could not bring a *Bivens* action to vindicate a deprivation of his First Amendment rights because the comprehensive remedial measures provided by congressional legislation and Civil Service Commission regulations were "special factors counselling hesitation in the creation of a new remedy." 462 U.S. at 380, 103 S.Ct. 2404. Notably, the Court was working on the assumption that the "civil service remedies were not as effective as an individual damages remedy and did not fully compensate ... [petitioner] for the harm he suffered." *Id.* at 372, 103 S.Ct. 2404 (footnotes omitted). The Court reasoned that

> [t]he question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment

Nation's history and tradition.' " *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460–61 (2d Cir.1996) (citations omitted); *see also Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 2478 (2003) ("The liberty protected by the Constitution allows homosexual persons the right to make" choices concerning his or her sexuality.); *Troxel v. Granville*, 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("the interest of parents in the care, custody, and control of their children" is a constitutionally protected liberty interest); *Zablocki v. Redhail*, 434 U.S. 374, 384, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) ("the right to marry is part of the fundamental 'right of privacy' implicit in the Fourteenth Amendment's Due Process Clause"). Plaintiff claims that because an IRS audit is a quasi criminal administrative proceeding, it has a fundamental

right to review all documents that the IRS considered in making its determinations. (Stewart Aff. ¶ 18.) While we are not convinced that this is an issue of substantive due process, for the purposes of this motion, we will assume that plaintiff has alleged that defendants infringed upon a constitutionally protected liberty interest. We will also assume that plaintiff has included allegations of conduct that "shocks the conscience." *See United States v. Jackson*, 345 F.3d 59, 67 (2d Cir.2003) (stating that the Second Circuit recognizes that conduct that "shocks the conscience" may constitute a violation of substantive due process, but that plaintiffs rarely succeed with such claims). Accordingly, we will consider plaintiff's procedural due process and substantive due process claims under the rubric of "due process."

should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights.

*Id.* at 388, 103 S.Ct. 2404.

In *Schweiker v. Chilicky,* the Court applied the reasoning in *Bush* and held that a new remedy should not be created to allow individuals who were improperly denied social security disability benefits in violation of their due process rights to pursue an action for money damages because the remedial measures provided by the social security system counselled against it. 487 U.S. 412, 428–29, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Therefore, the Court recognized that the remedies already available to the aggrieved individuals did not provide "complete relief" because they could not seek monetary damages for a violation of a constitutional right. *Id.* at 425, 108 S.Ct. 2460. However, the Court noted that

the concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* at 423, 108 S.Ct. 2460. Thus, a *Bivens* remedy was ruled inappropriate because the social security system provided "meaningful safeguards or remedies for the rights of persons situated as" the aggrieved parties were. *Id.* at 425, 108 S.Ct. 2460.

In the present case, we are presented with the question of whether plaintiff should be allowed to pursue a *Bivens* claim against individual IRS agents alleged to have violated plaintiff's First Amendment and due process rights. The Second Circuit has yet to reach this issue, but it has held that *Bush* and *Schweiker* preclude the creation of a new *Bivens* remedy where Congress has adopted a "comprehensive remedial structure to address disputes" between the relevant government agent and the aggrieved party even where that mechanism fails to provide "complete relief." *Sugrue v. Derwinski,* 26 F.3d 8, 12–13 (2d Cir.1994) (holding that a veteran could not bring a *Bivens* action against Veterans Administration hospital employees to vindicate due process violations because Congress had provided for a system for adjudicating disputes involving benefit claims). We therefore must determine whether the Code provides for a "comprehensive remedial structure to address disputes" between individual IRS agents and taxpayers alleging that audits were conducted to retaliate for the taxpayer's public comments in violation of the First Amendment and that tactics were employed that resulted in due process violations.

## IV. *The Remedial System Provided Under the Internal Revenue Code*

The Fourth Circuit recently noted that "[i]t would be difficult to conceive of a more comprehensive statutory scheme, or one that has received more intense scrutiny from Congress, than the Internal Revenue Code." *Judicial Watch, Inc. v. Rossotti,* 317 F.3d 401, 410, *cert. denied,* —— U.S. ——, 124 S.Ct. 179, 157 L.Ed.2d 47 (4th Cir.2003) (holding that the plaintiff could not pursue a *Bivens* action against IRS agents to remedy alleged First Amendment and due process violations that occurred in connection with an audit because the remedial system already in place cautioned against such action). Despite the

breadth of the Code, it does not provide many avenues for avoidance of an audit in the first instance. This is largely due to the fact that the Anti–Injunction Act precludes a plaintiff from bringing suit to enjoin an IRS audit except in a very narrow set of circumstances. 26 U.S.C. § 7421(a) (except where the Code otherwise provides "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person"); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) (recognizing an exception to the Anti–Injunction Act where the taxpayer demonstrates that "under no circumstances could the Government ultimately prevail" and "equity jurisdiction otherwise exists"). A taxpayer may, as discussed previously, refuse to cooperate with the IRS and force the IRS to bring a summons enforcement proceeding in district court pursuant to 26 U.S.C. § 7604 and then contest the validity of the audit in district court on constitutional grounds. *See Judicial Watch*, 317 F.3d at 410.[7] This may not be an acceptable alternative to some, especially because a taxpayer could face contempt charges in such a proceeding. 26 U.S.C. § 7604(b). Therefore, the taxpayer may prefer to proceed with the audit and challenge any alleged tax deficiency. In order to do so the taxpayer can: (1) challenge the audit findings in an internal IRS appeal pursuant to 26 C.F.R. § 601.106; (2) request a hearing before the IRS Office of Appeals pursuant to 26 U.S.C. § 6330(b) and challenge any adverse determination by way of a judicial

appeal; (3) appeal directly to the tax court pursuant to 26 U.S.C. § 6213(a); or (4) pay the alleged deficiency and bring suit for a refund in district court pursuant to 26 U.S.C. § 7422. *See Judicial Watch*, 317 F.3d at 410.

Because an audit is exceedingly difficult to avoid in the first instance under this statutory framework, there is the potential for abuse by the IRS and its individual agents. Congress has attempted to regulate the IRS and its agents by creating the Treasury Inspector General for Tax Administration. One of the inspector's duties is "to conduct and supervise audits and investigations relating to the programs and operations of the" IRS including investigations of claims of misconduct by IRS officials. 5 U.S.C.App. 3 § 2; *Judicial Watch*, 317 F.3d at 410. Congress has also enacted § 7433 of the Code which grants a limited right to sue the Federal government for the misconduct of individual IRS agents. Section 7433 provides:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision *of this Title, or any regulation promulgated under this title,* such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

**7.** A taxpayer may also apply to the National Taxpayer Advocate for relief from an audit under 26 U.S.C. § 7811(a). Such relief should be granted "if the taxpayer is suffering or about to suffer a significant hardship as a result of the manner in which the internal revenue laws are being administered ...." *Id.* We mention this in a footnote because there are data suggesting that the Advocate rarely

grants such relief. *See* Michael G. Tanner, *IRS Misconduct in an Audit: Is There A Civil Remedy?*, 55 TAX LAW. 107, 107–08 (2001) (citing data indicating that in a given period "92,852 requests for assistance which met the hardship criteria of the statute [were filed], yet only five taxpayer assistance orders were issued.").

26 U.S.C. § 7433(a) (emphasis added). Although this provision was enacted as part of the "Taxpayer Bill of Rights," it actually serves to limit taxpayer rights in the present case. The Supreme Court has noted that "the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Schweiker,* 487 U.S. at 423, 108 S.Ct. 2460. Therefore, § 7433 is important in the present case not so much for what it says as for what it fails to say. First, the section only applies to activities that occur in connection with a "collection of Federal tax" and therefore does not apply to audit activity. *See Judicial Watch,* 317 F.3d at 411–12; *Shreiber v. Mastrogiovanni,* 214 F.3d 148, 152 (3d Cir.2000). The legislative history demonstrates that this limitation was not inadvertent since a draft of the provision considered by Congress provided a civil remedy for actions occurring "in connection with *any determination or collection* of Federal tax." H.R. REP. No. 100–1104, at 229 (1988) (emphasis added); *see also Judicial Watch,* 317 F.3d at 411–12. The fact that the narrower language was ultimately adopted shows that Congress deliberately declined to create a civil remedy to vindicate misconduct that might occur in connection with an audit. Second, § 7433 only applies to violations of the Code and not necessarily to violations of the Federal Constitution. Again, the relevant legislative history demonstrates that this limitation was not inadvertent because the initial draft of this provision provided a remedy for violations of "any provision of Federal law." H.R. REP. No. 100–1104, at 229; *see also Judicial Watch,* 317 F.3d at 411–12. The fact the narrower language was adopted shows that Congress specifically considered a civil remedy for constitutional deprivations caused by IRS agents and declined to provide for such a remedy.

Therefore, we conclude that the existence of a comprehensive remedial framework enacted by Congress governing disputes between taxpayers and the IRS and individual IRS agents "suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may" occur during the performance of the IRS's duties. *Schweiker,* 487 U.S. at 423, 108 S.Ct. 2460. While we recognize that there are strong policy considerations in favor of recognizing a *Bivens* action to allow taxpayers a remedy for audits that were performed to retaliate for public comments made by the taxpayer,

> [t]he question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.

*Bush,* 462 U.S. at 378, 103 S.Ct. 2404. Although Congress's remedial structure may seem unfair to taxpayers who think that their First Amendment right to free speech and Fifth Amendment right to due process have been violated by individual IRS agents, the policy choice appears to have been dictated by practical concerns. As Judge Posner noted in *Cameron v. I.R.S.,*

> In an era of heavy taxation, many taxpayers, not merely "tax protesters," feel intense irritation at the federal tax authorities, and the courts would be flooded with frivolous cases if the unavoidable frictions generated by tax collection gave rise to potential damage claims against internal revenue agents.... Congress has given taxpayers all sorts

of rights against an overzealous official-dom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage claim against Treasury employees. It is hard enough to collect taxes as it is; additional obstructions are not needed.

773 F.2d 126, 129 (7th Cir.1985).

The view that a *Bivens* action is not an appropriate vehicle to redress First Amendment and due process violations in light of the remedial system already in place is well supported. *See Colon v. Maddalone,* No. 95 Civ. 0008, 1996 WL 556924, at *6 (S.D.N.Y.1996) (holding that the plaintiff could not bring *Bivens* action against IRS agents for alleged due process violations); *Judicial Watch,* 317 F.3d at 412 (holding that the plaintiff could not bring a *Bivens* action to redress a deprivation of the taxpayer's First Amendment and due process rights that occurred in connection with an audit); *Shreiber,* 214 F.3d at 152 ("a *Bivens* action should not be inferred to permit suits against IRS agents accused of violating a taxpayer's constitutional rights"); *Fishburn v. Brown,* 125 F.3d 979, 983 (6th Cir.1997) (no *Bivens* remedy to redress due process violations); *Vennes v. An Unknown Number of Unidentified Agents of the United States,* 26 F.3d 1448, 1454 (8th Cir.1994) (no *Bivens* remedy to redress substantive due process violations by IRS agents); *Schadl v. Kupinse,* No. 99 Civ. 844, 2001 WL 471891, at *5 (D.Conn.2001) (holding that no *Bivens* action may be maintained against IRS agents); *cf. Yalkut v. Gemignani,* 873 F.2d 31, 35 (2d Cir.1989) ("It is doubtful, however, that a taxpayer's right to due process could be violated by an IRS levy carried out in accordance with federal law and IRS policy.").

There is, however, some authority for the proposition that a *Bivens* remedy is appropriate where a plaintiff alleges that the individual agents conducted a retaliatory audit in violation of plaintiff's First Amendment rights. *See Nat'l Commodity & Barter Ass'n v. Archer,* 31 F.3d 1521, 1527 (10th Cir.1994) (holding that a plaintiff may redress First and Fourth Amendment violations caused by individual IRS agents in a *Bivens* action but that a plaintiff may not pursue claims for due process violations in a *Bivens* action against the same defendants); *W. Ctr. for Journalism v. Cederquist,* 235 F.3d 1153, 1159 (9th Cir.2000) (Reinhardt, J., concurring) (arguing in dicta that *Bush* and *Schweiker* do not preclude a *Bivens* remedy to vindicate First Amendment violations that occurred in connection with a retaliatory audit because *Bush* and *Schweiker* do not apply where Congress provided no relief). This minority view is essentially based on the premise that the remedy is justified because, under the current system, the taxpayer has no remedy. The Supreme Court, however, has made clear that the question is not whether a remedy is available but whether Congress has provided "meaningful safeguards or remedies for the rights of persons situated as" the aggrieved parties were. *Schweiker,* 487 U.S. at 425, 108 S.Ct. 2460; *see also Sugrue,* 26 F.3d at 12–13. As discussed previously, Congress has provided for relief, though certainly not complete relief, from retaliatory audits and has provided for a variety of ways to appeal the findings of a retaliatory audit. There are also safeguards within the IRS to police misconduct by its individual agents. Whether this Court believes Congress has adopted the best policies is not relevant to the determination because the comprehensive scheme already in place "suggests that Congress has provided what it considers adequate remedial mechanisms for" First Amendment

and due process violations that occur during the administration of audits by IRS agents. *Schweiker*, 487 U.S. at 423, 108 S.Ct. 2460.

## V. *HVBP's Claims Must be Dismissed*

In the present case, HVBP has brought a *Bivens* action wherein it claims violations of its First Amendment right to free speech, Fourth Amendment right to be free from unreasonable searches and seizures and Fifth Amendment substantive and procedural due process rights. Having concluded that plaintiff has failed to allege facts making out a violation of the Fourth Amendment, we have considered only whether an additional *Bivens* remedy should be recognized to redress alleged First Amendment due process violations that occurred in connection an IRS audit. We hold that in light of the comprehensive remedial system already in place, a new *Bivens* action should not be recognized to allow a plaintiff to sue individual IRS agents for damages resulting from alleged First Amendment and due process violations. Therefore, HVBP's *Bivens* action must be dismissed.[8] Furthermore, even construing the allegations in the Complaint liberally, HVBP has failed to state any cognizable claim against defendants. Therefore, HVBP's claims must be dismissed in their entirety and we need not consider defendants' motion for summary judgment.

### CONCLUSION

For the reasons discussed herein, defendants William Strugatz and Celeste Richardson's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is granted. Accordingly, plaintiff Hudson Valley Black Press's *Bivens* claims premised on First and Fifth Amendment violations are dismissed with prejudice and plaintiff's *Bivens* claim premised on a Fourth Amendment violation is dismissed without prejudice. Plaintiff may file within 30 days of entry of this Opinion and Order a Fifth Amended Complaint alleging a *Bivens* Fourth Amendment claim, if such can be done in compliance with FED. R. CIV. P. 11.

SO ORDERED.

---

8. Because leave to amend plaintiff's First Amendment and due process *Bivens* claims would be futile, those claims are dismissed with prejudice. *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir.2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss . . . .").