**Daniel SUGRUE, Plaintiff–Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, and S. Wohl, Robert J. Schmidt, John Does 1–X and Mary Does 1–X, the true names of the said Doe defendants being unknown to the plaintiff at this time, Defendants–Appellees.**

**Nos. 483, 686, Dockets 93–6137, 93–6139.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1993.

Decided May 17, 1994.

Kevin P. Quill, Long Island City, NY, for plaintiff-appellant.

Jennifer C. Boal, Asst. U.S. Atty. E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Deborah B. Zwany, Asst. U.S. Attys., E.D.N.Y., of counsel), for defendants-appellees.

Before: MAHONEY and WALKER, Circuit Judges, and METZNER *, District Judge.

MAHONEY, Circuit Judge:

Plaintiff-appellant Daniel Sugrue appeals from a judgment entered January 4, 1993 in the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge,* that dismissed Sugrue's actions against the Department of Veterans Affairs [1] for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and against several named and unnamed employees of the VA (the "VA Employees") for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). *See Sugrue v. Derwinski,* 808 F.Supp. 946 (E.D.N.Y. 1992) (opinion supporting judgment), as amended by *Sugrue v. Derwinski,* No. CV–90–1972, slip op. at 7 (E.D.N.Y. Mar. 26, 1993). Sugrue's complaints against the VA and the VA Employees alleged that the defendants had violated his rights under the Fifth Amendment to the Constitution, the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, in determining his disability benefit award.

We affirm.

## Background

This dispute stems from long term injuries sustained by Daniel Sugrue when he was

* The Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation.

1. The Veterans' Administration, the predecessor to the Department of Veterans Affairs, was redesignated as the Department of Veterans Affairs by the Department of Veterans Affairs Act, Pub.L. No. 100–527, § 2, 102 Stat. 2635, 2635 (1988). Both the Department and the Administration are hereinafter referred to as the "VA".

held as a prisoner of war. During the Korean War, Sugrue, then a soldier in the United States Army (the "Army"), was a prisoner of war from April 1951, when he was taken captive, to August 1953, when he was released at the conclusion of that conflict. Sugrue was honorably discharged from the Army in 1953. At that time, an Army medical examination revealed that Sugrue suffered from "Parkinsonism" and "Anxiety Reaction." In that connection, a VA adjudication division rated him as thirty percent disabled.

In 1981, the VA advised former prisoners of war of legislation enabling them to obtain medical care at VA facilities. *Id.* On February 14, 1983, Sugrue availed himself of this service and underwent a medical examination at a VA facility by a neurologist retained by the VA. According to Sugrue, the neurologist determined that Sugrue, a lawyer, suffered from a neurological disorder resulting in near "total disability for work as an attorney."

Sugrue filed a claim with the VA based upon this diagnosis. By letter dated April 6, 1983, S. Wohl, one of the VA Employees, rejected Sugrue's claim on the ground that "the evidence d[id] not warrant any change" in the prior disability determination.

On April 5, 1984, Sugrue initiated an administrative appeal of this finding by filing with the VA a notice of disagreement challenging the VA's failure to raise his disability rating. *See* 38 U.S.C. 4005 (1988) (recodified as 38 U.S.C. § 7105 (Supp. III 1991)). By letter dated April 11, 1984, Robert J. Schmidt (another of the VA Employees), a regional VA adjudication officer, invited Sugrue to undergo a neuropsychiatric examination. Following examinations by a psychiatrist and a neurologist, the VA increased Sugrue's disability rating to fifty percent. Sugrue continued to disagree with his disability rating, and pursued his case before the Board of Veterans Appeals (the "BVA"). After a hearing at which Sugrue's claim was presented by counsel, however, the BVA affirmed his fifty percent disability rating.

Sugrue then filed the instant actions, contending that the VA and the VA Employees violated (1) the Privacy Act, 5 U.S.C. § 552a, as a result of the VA's failure to maintain its record regarding Sugrue "with accuracy, relevance, timeliness, and completeness, necessary to assure fairness to [Sugrue] in reaching its determination;" (2) the FOIA, 5 U.S.C. § 552, in that "[Sugrue's] claim and defendants [sic] adverse determination thereof was [sic] affected by matter required to be published in the Federal Register and not so published;" (3) the Fifth Amendment guarantee of due process; and (4) the Fifth Amendment prohibition against the taking of private property for public use without just compensation.

The district court dismissed the complaints, for lack of subject matter jurisdiction as to the complaint against the VA, *see Sugrue*, 808 F.Supp. at 950, and for failure to state a claim as to the complaint against the VA Employees. *See id.* at 951. The district court also denied Sugrue's motion to amend his complaint against the VA to add the VA Employees as individual defendants. *See id.*

This appeal followed.

### Discussion

38 U.S.C. § 511 (Supp. III 1991) provides in pertinent part that:

(a) The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans.... Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

(b) The second sentence of subsection (a) does not apply to—

(1) matters subject to section 502 of this title;

(2) matters covered by sections 1975 and 1984 of this title;

(3) matters arising under chapter 37 of this title; and

(4) matters covered by chapter 72 of this title.

Section 502 relates to judicial review of rules and regulations to which reference is made by 5 U.S.C. § 552(a)(1) or 553 (regarding rules and regulations that federal agencies are required to promulgate by FOIA), but § 502 review is available only in the Court of Appeals for the Federal Circuit. Sections 1975 and 1984 relate to civil actions regarding life insurance. Chapter 37 relates to housing and small business loans.

Chapter 72 relates to the United States Court of Veterans Appeals, an Article I court established in 1988 that has "exclusive jurisdiction to review decisions of the [BVA]." 38 U.S.C. § 4052(a) (1988) (recodified as 38 U.S.C. § 7252(a) (Supp. III 1991)). However, that jurisdiction is available only as to "any case in which a notice of disagreement is filed under section 4005 [now § 7105] of title 38 . . . on or after the enactment of [Public Law No. 100–687; i.e., November 18, 1988]." Veterans' Judicial Review Act—Veterans' Benefits Improvement Act of 1988, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122; *see also Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir.1991). As indicated earlier, Sugrue filed his notice of disagreement on April 5, 1984.

Accordingly, none of the exceptions stated in § 511(b) apply in this case, and the governing rule is provided by § 511(a)'s bar of review of the VA's determination of Sugrue's benefit level "by any court, whether by an action in the nature of mandamus or otherwise." As Judge Glasser correctly ruled, this language prevented the district court from exercising subject matter jurisdiction over Sugrue's claims against the VA. *See Sugrue,* 808 F.Supp. at 949–50.

■ Section 511(a) is designed to (1) ensure that benefits claims will not burden the courts and the VA with litigation, and (2) promote the adequacy and uniformity of complex veterans' benefits decisions. *Johnson v. Robison,* 415 U.S. 361, 369–70, 94 S.Ct. 1160, 1166–67, 39 L.Ed.2d 389 (1974).[2] In *Johnson,* the Court distinguished between suits challenging the constitutionality of the statutes underlying veterans programs, to which § 511(a) does not apply (over which courts thus have jurisdiction), and actions of the VA under those statutes in determining qualification for benefits, to which § 511(a) does apply (over which courts therefore lack jurisdiction). *See Johnson,* 415 U.S. at 367–74, 94 S.Ct. at 1165–69; *Larrabee,* 968 F.2d at 1500.

■ Sugrue's claims against the VA challenge the VA's denial of a certain level of benefits to Sugrue based upon a disputed disability rating. His complaints seek "to place plaintiff in the position he would have occupied but for the `. . . unlawful acts and conduct [of the VA and the VA employees] and mak[e] him whole for all entitlements and benefits he would have received but for [said] unlawful acts and conduct."

Although Sugrue's complaints invoke provisions of the Fifth Amendment and are styled in part as constitutional actions, the courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms. *See Pappanikoloaou v. Administrator of Veterans Admin.,* 762 F.2d 8, 9 (2d Cir.) (per curiam) ("one may not circumvent § [5]11(a) by seeking damages on a constitutional claim arising out of a denial of benefits") (collecting cases), *cert. denied,* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985); *see also Larrabee,* 968 F.2d at 1500 (§ 511(a) "precludes judicial review of non-facial constitutional claims") (collecting cases). Similarly, neither the Privacy Act nor the FOIA may be used as a rhetorical cover to attack VA benefits determinations.

■ We turn to Sugrue's claims against the VA Employees. In accordance with *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), we decline, as did the district court, to find that a cause of action lies against the VA Employees in their individual capacities.

---

**2.** Section 511 was enacted by the Department of Veterans Affairs Codification Act, Pub.L. No. 102–83, § 2(a), 105 Stat. 378, 388 (1991). It replaced, however, a substantially identical predecessor provision, *see* 38 U.S.C. § 211(a) (1988), that was construed in *Johnson. See Larrabee by Jones v. Derwinski,* 968 F.2d 1497, 1500 (2d Cir.1992) (noting that 1970 version of § 211(a) substantially similar to current § 511(a)).

In *Bush,* an employee of the National Aeronautics and Space Administration sued the Director of the George C. Marshall Space Flight Center (the "Center") ·after the Director· demoted the employee, allegedly in retaliation for publicly critical remarks made by the employee about the Center. The employee sought damages for a claimed violation of his rights under the First Amendment. The Supreme Court noted that although *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and its progeny had established that the Constitution supports private causes of action against federal officials for constitutional torts, *see Bush,* 462 U.S. at 374, 103 S.Ct. at 2409, "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service." *Id.* at 389, 103· S.Ct. at 2417. Accordingly, the Court declined·to find a new private right of action for a federal employee when comprehensive federal legislation had already established "an elaborate remedial system that ha[d] been constructed step by ·step, with careful attention to conflicting policy considerations." *Id.* at 388, 103 S.Ct. at 2417.

In *Chilicky,* the Court rejected claims premised upon the denial of Fifth Amendment rights that were advanced by social security disability benefit recipients against federal and state officials who administered the disability benefit program. After detailing the multilayered remedial scheme available to benefits claimants under the social security disability program, the Court held that the case could not be reasonably distinguished from *Bush,* stating:

> Here, exactly as in *Bush,* Congress has failed to provide for "complete relief": respondents have not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits. The creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed. Congress, however, has not failed to provide meaningful safeguards or remedies for the rights of persons situated as respondents were. Indeed, the system for

protecting their rights is, if anything, considerably more elaborate than the civil service system considered in *Bush.*

487 U.S. at 425, 108 S.Ct. at 2468–69 (citations omitted); *cf. FDIC v. Meyer,* —— U.S. ——, ——, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994) (declining to authorize *Bivens* actions against federal agencies).

In our view, the same reasoning applies in the context of veterans' benefits. Sugrue's action against the VA Employees is based solely upon their acts or omissions concerning the assigning of a disability rating, and hence a benefit level, to Sugrue. Congress has enacted a comprehensive remedial structure to address disputes regarding disability ratings and benefits claims by veterans.

A veteran claiming disability benefits from the VA enjoys "a beneficial non-adversarial system" of adjudicating veterans benefits claims in which the VA is "to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." H.R.Rep. No. 963, 100th Cong., 2d Sess. 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795. For example, at the time when Sugrue's VA claim was under administrative consideration, the VA was required to assist claimants in obtaining evidence in support of their claims, 38 U.S.C. § 3007(a) (1988) (recodified as 38 U.S.C. § 5107(a) (Supp. III 1991)). Moreover, claimants were entitled to: (1) receive the benefit of the doubt in proving benefit claims, 38 U.S.C. § 3007(b) (1988) (recodified as 38 U.S.C. § 5107(b) (Supp. III 1991)); and (2) reopen disallowed claims by submitting new and material evidence. 38 U.S.C. § 3008 (recodified as 38 U.S.C. § 5108 (Supp. III 1991)).

As in *Bush* and *Chilicky,* the scheme of review for veterans' benefit claims provides meaningful remedies in a multitiered and carefully crafted administrative process. Further, the fact that Congress has explicitly foreclosed a remedy in Article III courts against the VA, *see* § 511(a), and the policies underlying that prohibition, *see Johnson,* 415 U.S. at 369–70, 94 S.Ct. at 1166–67, suggest that Congress' failure to create a remedy against individual employees of the VA was not an oversight. Finally, Congress has ac-

corded frequent attention to the issue of judicial review of VA benefits determinations, and only in 1988 did it provide for a limited form of review when it established the United States Court of Veterans Appeals, an Article I court authorized to review BVA decisions. *See* Veterans' Judicial Review Act—Veterans' Benefits Improvement Act of 1988, Pub.L. No. 100–687, §§ 301–303, 102 Stat. 4105, 4113–22 (codified in scattered sections of 38 U.S.C.); H.R.Rep. No. 963 at 10–13, *reprinted in* 1988 U.S.C.C.A.N. at 5792–94 (recounting numerous previously unsuccessful attempts to enact judicial review of veterans benefits determinations). This history provides additional evidence that Congress has declined to enact the remedy that Sugrue asks us to create against the VA Employees. Following *Bush* and *Chilicky*, we will not create such a remedy when Congress has chosen not to do so.

### Conclusion

The judgment of the district court is affirmed.