UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2004

(Argued: January 13, 2005          Decided: May 27, 2005)

Docket No. 04-1949-cv

————————————

HUDSON VALLEY BLACK PRESS,

*Plaintiff-Appellant,*

—v.—

INTERNAL REVENUE SERVICE,
WILLIAM STRUGATZ & CELESTINE RICHARDSON,

*Defendants-Appellees.*

————————————

Before:

KEARSE and CABRANES, *Circuit Judges*, and KORMAN,* *District Judge.*

————————————

Appeal from a judgment of the United States District Court for the Southern District of New York (William C. Conner, *Judge*), dismissing plaintiff's amended complaint for failure to state a claim. Plaintiff sought damages from the Internal Revenue Service and two of its employees arising out of a tax audit allegedly undertaken in retaliation for the plaintiff's public criticism of the Internal Revenue Service.

AFFIRMED.

————————————

*The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

STEPHEN BERGSTEIN, Thornton, Bergstein & Ullrich, Chester, New York, *for plaintiff-appellant*.

MICHAEL R. HOLDEN, Assistant United States Attorney for the Southern District of New York (Edward Scarvalone, Assistant United States Attorney, *on the brief*), *for* David N. Kelley, United States Attorney for the Southern District of New York, *for defendants-appellees*.

———————————

KORMAN, District Judge:

This appeal from a judgment entered in the United States District Court for the Southern District of New York (William C. Conner, *Judge*) squarely presents the issue whether taxpayers may seek to recover damages against employees of the Internal Revenue Service ("IRS") for undertaking an audit in retaliation for the exercise by a taxpayer of rights protected by the First Amendment. Specifically, in its complaint, the dismissal of which is the subject of this appeal, the Hudson Valley Black Press ("HVBP"), the publisher of a newspaper that focuses on issues of interest to the African-American community, alleges that, after the IRS was found liable for race discrimination and retaliation against an African-American employee in its Poughkeepsie office, see Agonafer v. Rubin, 35 F. Supp.2d 300, 305 (S.D.N.Y. 1998), HVBP published an article that was highly critical of the IRS. Two weeks later, Charles A. Stewart, HVBP's sole proprietor, was notified that HVBP would be audited by the IRS. At some time thereafter, an IRS employee, William Strugatz ("Strugatz"), scheduled a meeting at HVBP's offices, and, upon his arrival, made racially offensive remarks about slavery reparation and the name and editorial content of The Black Press.

After concluding his audit, Strugatz made repeated threats, and attempted unsuccessfully to coerce HVBP into signing a fraudulent and false report. Strugatz then filed a false audit report, and

after this report was initially rejected by an IRS hearing officer, Strugatz again appeared at HVBP's offices, using threats and coercive tactics in an attempt to make HVBP sign the false report. HVBP again refused to sign. Subsequently, the IRS assigned a second employee, Celestine Richardson ("Richardson"), to take over the audit. Richardson and Strugatz maintained that, because HVBP was delinquent in paying payroll taxes, they continued to audit HVBP even after the IRS hearing officer rejected Strugatz's initial report.

After Richardson replaced Strugatz, the IRS seized all of HVBP's accounting records relating to the period in which delinquent payroll taxes were alleged. The IRS seized not only HVBP's tax returns for the period in question, but also the diskettes which contained the tax records, leaving HVBP with no copies of these returns. HVBP repeatedly requested that copies of the tax returns be made available, but these requests were unsuccessful. Richardson acknowledged that the IRS had plaintiff's tax records, and promised to provide copies of the tax returns in accordance with the Freedom of Information Act, but still failed to do so. Indeed, tax liens were filed against HVBP for the period of allegedly delinquent payroll taxes. An administrative hearing was convened, and plaintiff asked hearing officer Michael Smith ("Smith") for the return of HVBP's records and copies of HVBP's tax returns. Smith denied plaintiff's request, stating "no federal Judge would overrule my decision and I affirm the agent's lien against you."

HVBP contends that, as a result of the retaliatory audit and other misconduct by the defendants, it suffered a loss in earnings, suffered damage to its "good name and reputation," and was rendered unable to publish The Black Press or otherwise operate its business. Accordingly, HVBP brought this action to recover damages, alleging that the defendants' conduct violated plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments. HVBP also sought to

have the tax liens in question vacated. While the IRS was also named originally as a defendant, it was dropped as a party in plaintiff's Fourth Amended Complaint.

The complaint was dismissed for failure to state a claim. Hudson Valley Black Press v. IRS, 307 F. Supp. 2d 543, 553 (S.D.N.Y. 2004). This appeal ensued. Because plaintiff's brief challenges only the district court's dismissal of its First Amendment cause of action, it is the only one we consider. See Feingold v. New York, 366 F.3d 138, 160 (2d Cir. 2004); Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). The sole question, then, is whether the district court erred by refusing to recognize a remedy against the named employees of the IRS for the First Amendment violations alleged to have been occasioned by the audit of HVBP. In resolving this question we assume the truth of the allegations contained in the complaint. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**Discussion**

In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the plaintiff sought damages against federal law enforcement officers arising out of an illegal search and seizure, the Supreme Court held that, while "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages," id. at 396, such a remedy was appropriate nonetheless, because Congress had not prohibited such a cause of action and there were "no special factors counselling hesitation in the absence of affirmative action by Congress." Id. While the plaintiff invokes Bivens in seeking damages for the violation of its rights protected by the First Amendment, subsequent cases threshing out "the special factors" alluded to in Bivens make it impossible for plaintiff to prevail. Because the legal principles are so well settled, we do not undertake a case-by-case analysis of the law as it has developed since Bivens was decided.

-4-

Instead, we focus on two Supreme Court cases that lay out the law as it applies here.

In Bush v. Lucas, 462 U.S. 367 (1983), the Court refused to extend Bivens to create a cause of action for a federal employee who alleged he had been demoted, in violation of the First Amendment, for publicly criticizing his employer. The plaintiff in Bush was an aerospace engineer employed at a flight center operated by the National Aeronautics and Space Administration ("NASA"), who made a number of public statements highly critical of his employer. Id. at 369. After the plaintiff was subsequently demoted, he pursued the available administrative remedies, first appealing his demotion to the Federal Employee Appeals Authority and, after an adverse ruling, taking his case to the Civil Service Commission's Appeals Review Board. Id. at 369-70. The Board reopened the plaintiff's case and ultimately reinstated him with back pay. Id. at 370. Because the remedial scheme did not provide for the recovery of damages for the emotional distress he suffered, he sought recovery in an action relying on Bivens.

While acknowledging that the administrative remedies available did not "provide complete relief for the plaintiff," id. at 388, the Court nonetheless refused to create a Bivens remedy because the plaintiff's allegations implicated policy questions in an area that had received careful attention from Congress, and because "Congress is in a better position to decide whether or not the public interest would be served by creating" a cause of action for damages. Id. at 390. As the Court framed the issue, the question was "not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." Id. at 388.

Similarly, in Schweiker v. Chilicky, 487 U.S. 412 (1988), the Court held that Bivens relief

was unavailable for Social Security recipients whose benefits had been terminated improperly in violation of the Due Process Clause. Id. at 428-29. The plaintiffs in Chilicky were three individuals whose disability benefits were wrongfully terminated. They appealed the termination of benefits through the administrative process, and had their benefits restored, while also receiving retroactive benefits. Id. at 417. Nevertheless, the plaintiffs filed suit, seeking damages for emotional distress and for loss of necessities during the period they had not received benefits. The Supreme Court agreed that "suffering months of delay in recovering the income on which one has depended for the very necessities of life cannot be fully remedied by the 'belated restoration of back benefits'" – the remedy provided by Congress. Id. at 428. "The trauma to respondents, and thousands of others like them, must surely have gone beyond what anyone of normal sensibilities would wish to see imposed on innocent disabled citizens." Id. at 428-29. Nevertheless, because Congress "has addressed the problems created by . . . wrongful termination of disability benefits" and, because "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program," the Supreme Court found no legal basis that would allow it to revise the decision Congress made not to include the cause of action for damages plaintiffs sought. Id. at 429.

Summarizing the lessons of Bush and other cases, the Chilicky Court observed that "the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies." Id. at 423;

see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001) ("[Chilicky] rejected the claim that a Bivens remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court. It [does] not matter . . . that '[t]he creation of a Bivens remedy would obviously offer the prospect of relief for injuries that must now go unredressed.'" (quoting Chilicky, 487 U.S. at 425)).

Our own decisions are consistent with Bush and Chilicky. In Sugrue v. Derwinski, 26 F.3d 8 (2d Cir. 1994), a veteran brought a claim for damages against employees of the Department of Veterans Affairs, alleging violations of his right to due process of law. We observed that Congress had created a complex scheme for the review of veterans' benefit claims – albeit one that did not create the specific remedy that plaintiff Sugrue sought. Id. at 10-11. We noted, further, that "Congress has accorded frequent attention to the issue of judicial review of VA benefits determinations," Id. at 12-13, and that "Congress' failure to create a remedy against individual employees of the VA was not an oversight." Id. at 12. Accordingly, we concluded that "Congress has declined to enact the remedy that Sugrue asks us to create against the VA Employees. Following Bush and Chilicky, we will not create such a remedy when Congress has chosen not to do so." Id. at 13.

Only recently in Dotson v. Griesa, 398 F.3d 156 (2d Cir. 2005), we reaffirmed the principle that "it is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying Bivens actions." Id. at 166-67. Dotson involved a former United States probation officer, who sued Judge Griesa and others, claiming that his termination was racially motivated. We affirmed the dismissal of the probation officer's claims under Bivens, because Congress had enacted a comprehensive remedial scheme in

the Civil Service Reform Act ("CSRA"). As Judge Raggi wrote:

> The CSRA represents Congress's comprehensive identification of the employment rights and remedies available to federal civil service personnel. . . . Precisely because the CSRA reflects a detailed and comprehensive system for dealing with federal employment concerns, federal courts will generally not attempt to supplement the relief afforded by that statute through other actions, including those implied under Bivens or derived from equity.

Id. at 160 (citing United States v. Fausto, 484 U.S. 439, 448-49 (1988)). Accordingly, "the remedial scheme established by the CSRA precludes federal civil service employees from challenging adverse employment decisions through Bivens actions for money damages." Id. at 168.

We reach a similar conclusion here. Under the comprehensive scheme provided by Congress, a taxpayer may resist an improper request for information by the IRS by refusing to produce the information or records. In such a circumstance, the IRS must issue a formal summons to the taxpayer. See 26 U.S.C. § 7602(a)(2). Because the IRS itself has no power of its own to enforce the summons, see United States v. Claes, 747 F.2d 491, 494 (8th Cir. 1984), if the taxpayer still resists the summons, the IRS must institute a proceeding in district court to compel production of the requested materials. See 26 U.S.C. § 7604; Judicial Watch, Inc. v. Rossotti, 317 F.3d 401, 410 (4th Cir. 2003). While it is true that requiring the IRS to resort to such legal actions may put the resisting taxpayer at risk of contempt or criminal penalties, see 26 U.S.C. § 7604(b); United States v. Rylander, 460 U.S. 752, 761-62 (1983), such penalties will not be imposed if a taxpayer who initially refused to comply "appear[ed] and interpose[d] good faith challenges to the summons." Reisman v. Caplin, 375 U.S. 440, 447-49 (1964) (interpreting predecessor to current statute).

A taxpayer may also cooperate with an audit, provide the requested information, and then challenge any alleged tax deficiency. A taxpayer has various avenues by which to do so. As the

district court noted, the taxpayer can:

> (1) challenge the audit findings in an internal IRS appeal pursuant to 26 C.F.R. § 601.106; (2) request a hearing before the IRS Office of Appeals pursuant to 26 U.S.C. § 6330(b) and challenge any adverse determination by way of a judicial appeal; (3) appeal directly to the [United States T]ax [C]ourt pursuant to 26 U.S.C. § 6213(a); or (4) pay the alleged deficiency and bring suit for a refund in district court pursuant to 26 U.S.C. § 7422.

307 F. Supp. 2d at 550 (citing Judicial Watch, 317 F.3d at 410). Notably, HVBP availed itself of at least some of these administrative remedies, stating in its complaint that it challenged the allegedly retaliatory audit in at least two administrative hearings.

Congress has also provided a mechanism by which aggrieved taxpayers may bring a civil action for damages against the United States in certain circumstances. See 26 U.S.C. § 7433. Section 7433 was originally enacted in 1988 as part of the "Taxpayer Bill of Rights," Judicial Watch, 317 F.3d at 411, and provides:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. § 7433(a). The civil damages action authorized by § 7433 complements the other administrative remedies which Congress has provided in regulating the relationship between those who pay taxes and those who collect them.

This is not the end of the scheme Congress provided. Congress created the Treasury Inspector General for Tax Administration, an entity distinct from the IRS, which investigates claims of IRS employee misconduct, in an effort to deter such misconduct. See 5 U.S.C. App. 3 § 2(B)(ii);

Judicial Watch, 317 F.3d at 410-11.  Moreover, the Internal Revenue Code itself prohibits unnecessary examinations or investigations, see 26 U.S.C. § 7605(b) ("No taxpayer shall be subjected to unnecessary examination or investigations . . . ."), and IRS agents are subject to discipline for violations of the Code.  Indeed, the third "Taxpayer Bill of Rights,"adopted by Congress in 1998, see Pub. L. No. 105-206, § 1203(b)(6), 112 Stat. 685, 721 (July 22, 1998), provides for termination of the employment of any IRS employee for violating the Code or any IRS rules "for the purpose of retaliating against, or harassing, a taxpayer [or] taxpayer representative . . . ."  Congress has also provided for the discharge and criminal prosecution of IRS employees engaged in certain misconduct, including "mak[ing] or sign[ing] any fraudulent entry in any book, or mak[ing] or sign[ing] any fraudulent certificate, return, or statement."  See 26 U.S.C. § 7214(a)(7).  Notably, HVBP has alleged conduct on the part of defendant Strugatz which, if proven, would warrant Strugatz's dismissal.

Of equal significance is the legislative history of § 7433, which establishes that the failure of Congress to include a damages action for tax assessment activities was not inadvertent.  In 1987, prior to § 7433's enactment, bills were introduced in Congress that would have authorized civil actions against IRS employees for violations of constitutional rights.  See S. 579, 100th Cong., 1st Sess., § 3(a) (1987) ("Any officer or employee of the [IRS] who, under color of any Federal law, subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."); see also H.R. 634, 100th Cong., 1st Sess., §9(a) (1987).  These broad bills were never enacted, and Congress instead passed § 7433, which allows actions only under certain circumstances, and only against the United States, not against individual IRS agents.

Moreover, before settling on the narrower version of § 7433 that only permits damages actions relating to tax collection, Congress initially considered a broader version of § 7433 that would have authorized damages actions arising "in connection with any <u>determination</u> or collection of Federal tax." S. 2223, 100th Cong., 2d Sess. § 123 (1988) (emphasis added); <u>see also</u> H.R. Conf. Rep. 100-1104 ("Conference Report"), 100th Cong., 2d Sess., at 228 (Oct. 21, 1988), 1988 U.S.C.C.A.N. 5048, 5288; <u>Judicial Watch</u>, 317 F.3d at 411. Congress rejected this broader version of § 7433. The Conference Report on the final version of § 7433 explains that it is

> limited to reckless or intentional disregard in connection with the collection of tax. An action under this provision may not be based on alleged reckless or intentional disregard in connection with the determination of a tax . . . . [T]he provision is limited to reckless or intentional disregard of the Internal Revenue Code and the regulations thereunder. An action may not be brought under this provision based on an alleged violation of a Federal law other than the Internal Revenue Code or a regulation promulgated thereunder.

Conference Report at 229; <u>see also</u> <u>Judicial Watch</u>, 317 F.3d at 411-12.

The legislative history of § 7433 plainly establishes that Congress expressly considered broader remedies – including civil suits relating to tax assessment and for violations of any federal laws – before rejecting them. <u>See</u> <u>Shreiber v. Mastrogiovanni</u>, 214 F.3d 148, 152-53 (3d Cir. 2000). Congress ultimately enacted a narrower version of § 7433 that allowed damages actions only relating to tax collection, not to tax assessment, and only for violations of the Internal Revenue Code and its implementing regulations, not for violations of all federal law. <u>Id.</u> As one commentator has observed:

> The specific language chosen by Congress was not the result of whim, but was enacted after nearly thirty years of consideration, thousands of phone calls and letters from taxpayers throughout the country, and testimony in numerous hearings not only conducted by Senator Pryor in 1988, but in hearings on the same alleged abuses conducted by Senator Montoya in the 1970s, Senators Levin and Grassley in the

1980s, and the Small Business Committee of the United States House of Representatives. . . . Congress only created a cause of action to remedy collection violations. . . . Congress is indeed aware that it did not provide a damage remedy for assessment errors and the potential hardship imposed on taxpayers. Yet, Congress has not amended § 7433 nor created any other provision to provide a remedy for conduct of the [IRS] in the determination of a tax.

Christopher M. Pietruszkiewicz, A Constitutional Cause of Action and the Internal Revenue Code: Can You Shoot (Sue) the Messenger?, 54 Syracuse L. Rev. 1, 24-26 (2004) (footnotes omitted).

Because of the complex remedial scheme that Congress has created, and the plain indication that the failure of Congress to provide a remedy for injuries arising from tax assessment was not inadvertent, every circuit that has considered the appropriateness of a Bivens remedy in the taxation context has uniformly declined to permit one. As the Ninth Circuit observed:

Relying on the comprehensiveness of the Internal Revenue Code, and the many explicit remedial provisions that the Code contains, our sister circuits that have addressed the question are nearly unanimous in holding that Bivens relief is not available for alleged constitutional violations by IRS officials involved in the process of assessing and collecting taxes . . . . The First, Third, Fifth, Sixth, Seventh, Eighth and Tenth Circuits have all held Bivens actions inapplicable for claims arising from federal tax assessment or collection.

Adams v. Johnson, 355 F.3d 1179, 1184-85 (9th Cir. 2004) (citing Shreiber, 214 F.3d at 152; Dahn v. United States, 127 F.3d 1249, 1254 (10th Cir. 1997); Fishburn v. Brown, 125 F.3d 979, 982-83 (6th Cir. 1997); Vennes v. An Unknown Number of Unidentified Agents of the United States, 26 F.3d 1448, 1453-54 (8th Cir. 1994); McMillen v. United States Dep't of Treasury, 960 F.2d 187, 190 (1st Cir. 1991); Baddour, Inc. v. United States, 802 F.2d 801, 807-09 (5th Cir. 1986); Cameron v. IRS, 773 F.2d 126, 129 (7th Cir. 1985)). The Fourth Circuit, too, has rejected a Bivens remedy against IRS officials in the context of a retaliatory tax audit like that alleged in this case. See Judicial Watch, 317 F.3d at 413 (concluding that "'it would be inappropriate to supplement [the]

regulatory scheme with a new judicial remedy' for alleged retaliatory tax audits" (quoting Bush, 462 U.S. at 368)).

Today we join our sister circuits and hold that Bivens relief is not available to taxpayers who allege First Amendment violations based on retaliatory tax audits. Congress has designed a complex and comprehensive administrative scheme that provides various avenues of relief for aggrieved taxpayers. Indeed, "[i]t would be difficult to conceive of a more comprehensive statutory scheme, or one that has received more intense scrutiny from Congress, than the Internal Revenue Code." Judicial Watch, 317 F.3d at 410. The collection of taxes would become "chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees. It is hard enough to collect taxes as it is; additional obstructions are not needed." Cameron, 773 F.2d at 129. In sum, Congress is institutionally well positioned to balance the competing interests at issue in the tax system, and to dictate what remedies are available to aggrieved taxpayers. Congress has done exactly that and we owe deference to the policy choices Congress has made.

## Conclusion

The judgment of the district court is affirmed.