**Eli Mason ROBERTS, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Lynn Walsh, Diane Herndon, Mary Hannah and National Financial Services, Defendants.**

**No. 06 CIV. 1518(VM).**

United States District Court, S.D. New York.

Dec. 28, 2006.

**646**

Eli Mason Roberts, New York City, Pro se.

Rebecca Anne Tapie, Thelen Reid Brown Raysman & Steiner, LLP, Robert William Yalen, New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Eli Mason Roberts ("Roberts"), brought this claim *pro se* against defendants the Internal Revenue Service ("IRS"), IRS employees Mary Hannah ("Hannah") and Diane Herndon ("Herndon"), former IRS employee Lynne Walsh ("Walsh") (collectively the "IRS Defendants"), and against defendant National Financial Services, LLC ("NFS"). Roberts's complaint arises out the IRS's assessment and collection of income tax allegedly owed by Roberts in relation to a sale of AOL Time Warner stock during the tax year 2002. Before the Court are the IRS Defendants' and NFS's motions to dismiss Roberts's complaint. For the reasons discussed below, both motions are GRANTED.

### I. BACKGROUND

#### A. FACTS AND PROCEDURAL HISTORY

Roberts's claims against NFS arise out of NFS's action in reporting a sale of stock by Roberts to the IRS. Roberts alleges that the IRS advised him that NFS reported the proceeds received by Roberts in 2002 for a sale of stock in AOL Time Warner to the IRS as "income." (Complaint, dated Feb. 24, 2006 ("Compl."), at 4; Plaintiff's Amended Response to Defendant National Financial Services [sic] Motion to Dismiss the Complaint ("Pl.'s Res. to NFS"), at 1 (asserting that NFS "made it look like a gain").) Roberts claims, and the Defendants do not deny, that this sale of stock actually resulted in a loss to Roberts since the value of AOL Time Warner had decreased since Roberts purchased the stock. Roberts's complaint also states that he had "never heard of [NFS]" prior to this dispute with the IRS, which began in 2004, since he "buy[s][his] stock through Fidelity Brokerage Services." (Compl. at 4.) However, Roberts's subsequent filings concede that he received a notice about the report to the IRS which contained NFS's name "at the top of the page along with Fidelity Brokerage Services." (Pl.'s Opp'n at 1.) Roberts does not clearly specify the cause of action he is claiming against NFS, and he does not ask for any type of relief from NFS.

Roberts's claims against the IRS Defendants arise out of the dispute between Roberts and the IRS concerning the amount of tax owed by Roberts for the tax year 2002. After receiving the report from NFS regarding the sale of Roberts's AOL Time Warner stock, the IRS notified Roberts of the new information it had received in an attempt to determine the tax consequences of the sale.

Although Roberts characterizes this correspondence as a "notice from the [IRS] that I owed them $9,333.00," (Compl. at 1), the notice is clearly an invitation for Roberts to challenge the proposed changes to his 2002 tax return by responding to the

notice. (*See* Compl. at Exhibit A.) The notice states only that "[the IRS is] proposing changes to [Roberts's] 2002 tax return" and that the "notice requires a response." (*Id.* at 1.) The first page also provides steps for Roberts to follow if he disagreed with the proposed changes, including "[e]nclos[ing] a signed statement explaining each change you disagree with and why you disagree" and "[i]nclud[ing] any supporting documents you wish us to consider." (*Id.*) The second page of the notice shows that the IRS is proposing to increase Roberts's taxable income by $23,807 relating to income from securities. (*Id.* at 2.) The third page of the notice states that "[the IRS] used the zero cost basis because [it was] not able to determine the cost or adjusted basis of the stock sold" and requests Roberts to "[p]lease provide the date you acquired the assets and the cost or adjusted basis for your asset." (*Id.* at 3.) Finally, page five of the notice contains a list of "information [used] to determine [the IRS's] tax proposal" and the first item listed is $23,741 for a sale of AOL Time Warner securities reported by NFS. (*Id.* at 5.)

Roberts did not follow the steps outlined in the IRS notice. However, Roberts states that he called the IRS numerous times, and even visited its Manhattan office once, but was not able to convince the IRS that the sale of AOL Time Warner stock was not income. After numerous subsequent notices, the IRS eventually levied several of Roberts's personal accounts to satisfy his alleged tax indebtedness and the associated penalty fees and interest charges. Soon afterwards, the IRS issued

Roberts a refund check for amounts levied in excess of the amount due. (Memorandum of Law in Support of IRS Defendants' Motion to Dismiss, dated July 31, 2006 ("IRS Mem."), at 4.) Subsequent to the filing of this case, the IRS sent Roberts another refund check for the funds collected in relation to the sale of the AOL Time Warner stock. (*See id.,* at 4 n. 4.) At a conference before this Court, Roberts acknowledged that he had in fact been refunded this money.[1] (*See* Hearing Transcript (May 19, 2006), at 20:17–21.)

Roberts alleges that the various IRS defendants engaged in fabrication, fraud, threats, deception, lying, embezzlement, plunder, theft, harassment, and stealing. Roberts further claims that the process used to levy his accounts was unconstitutional because "[t]he notice [of levy] did not give any elaborations about how, when or where [the levy would occur] and neither what the levy action would be on," (Compl. at 25, *accord id.* at 31), and because the IRS did not file a petition with a court naming Roberts as a defendant and allowing him to defend the petition before the levy occurred. Roberts alleges that the actions of the IRS Defendants' repeatedly violated the "right to know clause" and "fair notice act" of the United States Constitution. (*Id.* at 1, 2–3, 25, 27 & 31.)

Roberts asks for relief as follows:

I pray for a judgement [sic] against the [IRS], Diane Herndon and Lynne Walsh, to award me exemplary damages of $2,000,000 because of the extra losses I endured and because of damages beyond the actual losses. Also because of

---

1. The proposed changes notice from the IRS referenced above contains five other items of unreported income for Roberts during 2002, including two other securities sales amounting to $66, dividends paid from two corporations amounting to $1,047, and $8 of interest paid by NFS. Roberts apparently denies that he received any proceeds from the two report-

ed securities' sales or as interest from NFS. (Compl. at 28–31.) The IRS concedes that a small portion of the funds collected from Roberts were not returned. (*See* Hearing Transcript (May 19, 2006), at 13:14–21.) Roberts, however, does not seek return of these funds in this proceeding.

criminal procedures that was [sic] imposed upon me by the defendants and which led [sic] as a punishment against me for no reason.

I pray for a judgement [sic] against the [IRS], Diane Herndon and Lynne Walsh to award me punitive damages of $2,000,000 because of fabricated lies the defendants use to impose a harsh and a severe punitive taxation on me.

I pray for a judgement [sic] against the [IRS], Diane Herndon and Lynne Walsh to award me compensatory damages of $2,000,000 as an instance or means for the emotional harm and embarrassment I suffered while among bank personnel who I felt that they [sic] assumed that I was guilty of tax evasion, no matter how much I tried to explain my position of innocense [sic]. I also pray for this award to be given to make up for all the losses and emotional injury.

The total judgment I pray for is $6,000,000, which is a small amount compared to the amount of over-all damages the Internal Revenue Service imposed upon me.

*Id.* at 42–43. Also related to damages, Roberts claims that one of his banks charged him a $125 fee for processing the IRS's levy, that the IRS Defendants' actions "gave [him] a criminal tax record as a tax evader," (*id.* at 24), and that he is now exposed to additional, unmerited liability to the New York State Department of Taxation and Finance in regards to the proceeds of the sale of AOL Time Warner stock.

## B. *DEFENDANTS' MOTIONS TO DISMISS*

All of the IRS Defendants move to dismiss the Complaint for a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, they contend that Congress has not waived sovereign immunity to allow Roberts's claims. Defendants Herndon and Walsh also move to dismiss any claims against them in their individual capacities for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and pursuant to Federal Rule of Civil Procedure 12(b)(5) [2] for a failure of service of process as required by Federal Rule of Civil Procedure 4(i)(2)(4).

NFS argues that dismissal of the claims against it is appropriate on the following grounds for failure to: (1) state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (2) provide fair notice of his claim as required by Federal Rule of Civil Procedure 8(a)(2), and (3) demand any type of relief from defendant NFS as required by Federal Rule of Civil Procedure 8(a)(3). In support of its first alleged basis for dismissal, NFS argues that Roberts's Complaint fails to state a viable cause of action against NFS because Section 6045 of the Internal Revenue Code and Subsection 1.6045–1(p) of Title 26 of the Code of Federal Regulations require NFS to do precisely what Roberts complains of—report Roberts' security transaction to the I.R.S. (Defendant National Financial Services, LLC's Motion to Dismiss the Complaint, dated July 31, 2006 ("NFS Mot. Dismiss"), at 5.)

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

A district court may grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)

**2.** As Roberts specifically lists Herndon and Walsh is his prayer for relief, they move to dismiss on these additional grounds, in the event the Complaint is construed to assert claims against them in their individual capacities.

only if it appears beyond doubt that the non-moving party could prove no set of facts that would entitle it to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994). In reviewing the pleadings, a court must accept the non-moving party's well-pleaded factual allegations as true. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229; *Dove v. Fordham*, 56 F.Supp.2d 330, 335 (S.D.N.Y.1999).

In reviewing a *pro se* complaint, the Court takes into consideration the plaintiff's lack of legal training and holds the complaint to "less stringent standards than formal pleadings drafted by lawyers." *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997) (*citing Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also LaBounty v. Adler*, 933 F.2d 121, 122 (2d Cir.1991) ("We are obliged to construe [*pro se*] pleadings and papers liberally").

Additionally, a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. *See Stuto v. Fleishman*, 164 F.3d 820, 826 n. 1 (2d Cir.1999).

A different legal standard governs a court's review of motions to dismiss made pursuant to Fed. R. of Civ. P. 12(b)(1). In reviewing such a motion, it is a court's duty to resolve disputed jurisdictional facts. *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir.1993). Furthermore, in resolving a challenge to subject matter jurisdiction, a court does not draw inferences in favor of the plaintiff. *See Newsom–Lang v. War-*

*ren Int'l*, 129 F.Supp.2d 662, 663 (S.D.N.Y. 2001); *Harris v. New York State Dept. of Health*, 202 F.Supp.2d 143, 146–7 (S.D.N.Y.2002).

## B. *THE IRS DEFENDANTS' MOTION TO DISMISS*

The IRS Defendants correctly assert that federal sovereign immunity along with Roberts's failure to exhaust available administrative remedies bars his claims. Simply stated, sovereign immunity means "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir.2004) (*citing United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). This prohibition against suit extends to "a federal agency or federal officers [acting] in their official capacities." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994).

A waiver of sovereign immunity "must be unequivocally expressed in statutory text, and cannot simply be implied." *Adeleke*, 355 F.3d at 150 (internal citations omitted). Roberts's compliant references no Internal Revenue Code provisions that would allow for the instant suit. Moreover, the Court's review of those provisions that authorize suit against the IRS in certain circumstances find such provisions offer Roberts no basis to proceed before this court because Roberts has failed to exhaust his administrative remedies.[3]

If a taxpayer believes he or she was improperly assessed federal taxes, the taxpayer may directly petition the Tax Court for a redetermination of tax liability. *See* 26 U.S.C. § 6213. Alternatively, the tax-

---

**3.** To the extent Roberts's claims can be construed as tort claims, the Federal Tort Claims Act's limited waiver of sovereign immunity for tort claims expressly excludes "[a]ny claim arising in respect of the assessment or collection of any tax." 28 U.S.C. § 2680(c).

payer may pay the assessed tax and then file an administrative claim for a refund. *See* 26 C.F.R. § 301.6402–2. If this administrative claim is unsuccessful, the taxpayer may then commence an action in district court for a refund. *See* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary ...."). Roberts has not petitioned the Tax Court and has not filed the necessary administrative claim.

The Internal Revenue Code also includes a provision expressly allowing an action against the IRS for "wrongful" collection of taxes, which states, in relevant part, that if "any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision [or the Internal Revenue Code or related regulations], such taxpayer may bring a civil action for damages against the United States in a district court ...." 26 U.S.C. § 7433(a). However, § 7433 also requires a plaintiff to exhaust administrative remedies with the IRS as a prerequisite to any suit for damages in the district court. *See* 26 U.S.C. § 7433(d)(1). The IRS has established specific regulations by which a taxpayer may first administratively pursue a claim for wrongful tax collection under § 7433, which regulations make clear that "an action for damages filed in federal district court may not be maintained unless the taxpayer has filed an administrative claim pursuant to ... this section." 26 C.F.R. § 301.7433–1(e)(1). A plaintiff's "failure to comply with the regulation deprives the federal district court of jurisdiction." *Stephens v. United States*, 437 F.Supp.2d 106, 109 (D.D.C.2006) (*citing*

*Venen v. United States*, 38 F.3d 100, 103 (3rd Cir.1994)); *see also Music Deli & Groceries, Inc. v. I.R.S.*, 781 F.Supp. 992, 997 (S.D.N.Y.1991) ("The complaint does not allege or give rise to an inference that such remedies were exhausted. [The § 7433 claims] are therefore dismissed.").

There is no indication here that it would have been futile for Roberts to pursue administrative remedies, relieving him of his obligations to exhaust these options. *See Libutti v. United States*, 910 F.Supp. 67, 72 (N.D.N.Y.1995)(exhaustion would be futile where "the administrative agency is shown to be biased or has otherwise predetermined the issue before it."). Roberts's informal efforts to have the I.R.S. reconsider its determination were successful and led to the refund of the monies levied in relation to the AOL Time Warner stock sale. Thus, it cannot be said that the administrative agency had predetermined the issue. To the extent Roberts believes he is entitled to additional damages resulting from the allegedly improper levy, the appropriate initial course of action was to proceed administratively.

Finally, to the extent Roberts's Complaint can be construed to assert claims against Herndon and Walsh in their individual capacity, such claims are dismissed for failure to state a claim. The Internal Revenue Code nowhere contemplates actions directly against its employees and the Federal Tort Claims Act expressly excludes tort actions against federal employees when their actions were undertaken within the scope of the employment. *See* 28 U.S.C. § 2679(b)(1).

 Roberts's claims against Herndon and Walsh are no more viable if construed as claims asserting constitutional Due Process violations.[4] In *Bivens v. Six*

---

**4.** Again, construing Roberts's *pro se* Complaint liberally, the Court will interpret Rob-

*Unknown Named Agents of Federal Bureau Narcotics,* 403 U.S. 388, 390–97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized a direct cause of action against federal employees for damages for alleged constitutional breaches. However, no *Bivens* remedy lies for the alleged violations of the Internal Revenue Code at issue here. Where a statutory scheme sufficiently provides "adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," additional remedies under *Bivens* are not available. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). As the Second Circuit has recently held in denying *Bivens* relief to taxpayers claiming First Amendment violations, "it would be difficult to conceive of a more comprehensive statutory scheme, or one that has received more intense scrutiny from Congress, than the Internal Revenue Code." *Hudson Valley Black Press v. I.R.S.,* 409 F.3d 106, 113 (2d Cir.2005). Thus, as Congress has "designed a complex and comprehensive administrative scheme that provides various avenues of relief for aggrieved taxpayers," *see id.,* Roberts cannot assert a viable claims against these federal employees[5] for any alleged violations of his constitutional rights as a result of their tax assessment and collection related activities.

## C. *NFS' MOTION TO DISMISS*

 Roberts fails to allege, even in the most general terms, any cause of action against NFS; additionally, Roberts fails to seek any specific relief from NFS. While the Court will liberally construe the allegations in Roberts's *pro se* Complaint, his

pleadings must still comply with the Federal Rule of Civil Procedure, which require that defendant NFS be given fair notice of the claims against it. *See* Fed.R.Civ.P. 8 (a pleading must contain (1) the grounds for jurisdiction, " (2) a short and plain statement of the claim showing the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."). Where a complaint "contains no allegations indicating how the defendant violated the law or injured the plaintiff; a motion to dismiss the complaint in regard to that defendant should be granted." *Dove,* 56 F.Supp.2d at 335.

 Moreover, Roberts's claim against NFS is based entirely on NFS's reporting his AOL stock sale to the IRS. The Court cannot see how the acts allegedly undertaken by NFS give rise to a cause of action or resulted in injury to Roberts as NFS was required by law to report this transaction to the I.R.S. NFS, as a broker, is required to report "the name, address, and taxpayer identification number of the customer, the aggregate gross proceeds of all sales of the account during the reporting period ...." 26 C.F.R. 1.6045–1(p)(2006). NFS has done nothing more than what it was required to do under applicable regulations. That the IRS erroneously categorized these reported "gross proceeds" as a profit, in no way implicates NFS in any alleged wrongdoing. Thus even giving Roberts an opportunity to replead would be futile, Roberts's claim against NFS would nonetheless be fatally flawed. Consequently, any claims against NFS relating to its reporting to the I.R.S. the proceeds of Roberts's stock transactions at issue here are dismissed with prejudice.

---

erts's allegations that the IRS Defendants violated "the right to know clause" and "fair notice act" of the constitution (Compl. at 1, 2–3, 25, 27, & 31) as asserting constitutional Due Process violations.

**5.** As Roberts fails to state a claim against Herndon and Walsh, the Court need not address their additional argument for dismissal based on failure of service of process.

## III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendants Internal Revenue Service, Lynn Walsh ("Walsh"), Diane Herndon ("Herndon"), and Mary Hannah ("Hannah") (collectively, the "IRS Defendants") to dismiss this action for lack of subject matter jurisdiction is GRANTED; and further

**ORDERED** that the motion of defendants Herndon and Hannah to dismiss this action for failure to state a claim against them in their individual capacity is GRANTED with prejudice; and further

**ORDERED** that the motion of defendant National Financial Services to dismiss this action for failure to state a claim is GRANTED with prejudice.

The Clerk of Court is directed to close this case.

**SO ORDERED.**